IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LEONID P. KRIVOLENKOV**,

    Plaintiff,

v.

**JACOB FERRER; KIPO RAISER; OREGON STATE POLICE,**

    Defendants.

No. 3:20-cv-00759-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff Leonid P. Krivolenkov sued the Oregon State Police and two of its officers, Trooper Jacob Ferrer and Sergeant Kipo Raiser, following a lawful traffic stop that resulted in Plaintiff's arrest. He alleges that the officers violated his First and Fourth Amendment rights by (1) taking his cell phone and preventing him from recording; (2) unlawfully seizing his cell phone and towing his car; (3) unlawfully searching his phone; and (4) unlawfully arresting and wrongfully imprisoning him. Defendants filed a Motion to Dismiss and Motion for Summary Judgment [ECF 7]. I assume without deciding that Plaintiff has alleged valid claims and GRANT summary judgment. I accordingly DENY their Motion to Dismiss as moot.

## BACKGROUND

    The main events in this case are captured on Defendant Trooper Ferrer's body camera and dashboard camera and are largely undisputed. To the extent they are disputed, I view the facts in the light most favorable to Plaintiff, the nonmoving party.

1 – OPINION AND ORDER

This case stems from a lawful traffic stop, and centers around Plaintiff's subsequent arrest and the handling of Plaintiff's cell phone. On January 6, 2020, Plaintiff was pulled over by Trooper Ferrer for driving over the speed limit. Mr. Krivolenkov began recording on his cell phone from his driver's seat as soon as Trooper Ferrer approached his vehicle. Jacob Ferrer Decl. [ECF 8] Ex. 1 ("Def. Ferrer Body Cam."), at 05:13. Trooper Ferrer informed Mr. Krivolenkov that he was pulled over for violating the speed limit and asked for his driver's license. He also informed Mr. Krivolenkov that he was filming their interaction on his body camera. *Id.* at 05:18. Mr. Krivolenkov repeatedly refused to provide his driver's license, despite Trooper Ferrer informing him that he could be arrested for doing so. *Id.* at 06:06. Mr. Krivolenkov told Trooper Ferrer, "I am not going to provide you my ID" and requested Trooper Ferrer's supervisor. *Id.* at 06:27–06:29. Trooper Ferrer called for a backup officer over his radio. *Id.* at 06:31.

Trooper Ferrer informed Mr. Krivolenkov two more times that he would be arrested if he did not provide his license. *Id.* at 06:43, 07:06. Mr. Krivolenkov again insisted on the presence of a supervisor before providing his license. *Id.* at 07:12. Trooper Ferrer then informed Mr. Krivolenkov he was under arrest and Mr. Krivolenkov responded, "I am not going to be under arrest because I requested your supervisor and you denied." *Id.* at 07:30–07:32. Trooper Ferrer informed Mr. Krivolenkov he was under arrest again, opened the door of his vehicle, and ordered him to get out of the vehicle. *Id.* at 07:57–08:07. At that point, Mr. Krivolenkov got out his license and handed it to Trooper Ferrer. *Id.* at 08:19. Trooper Ferrer still ordered him to get out of the vehicle. *Id.* at 08:21, 08:36. After he again refused to do so, Trooper Ferrer grabbed at Mr. Krivolenkov's hand/wrist, knocking his cell phone out of his hand. *Id.* at 08:38. The cell phone fell to the ground, out of view of the body camera.

2 – OPINION AND ORDER

Trooper Ferrer continued to demand that Mr. Krivolenkov step out of the vehicle and Mr. Krivolenkov continued to refuse. Mr. Krivolenkov was visibly agitated and repeatedly yelled at Trooper Ferrer, accused him of lying, and said things like, "You lay your hands on me and I will defend myself" and "Shut the hell up officer." *Id.* at 09:09, 09:41. When Trooper Ferrer again informed Mr. Krivolenkov that he was under arrest, Mr. Krivolenkov replied "I am not going to be under arrest." *Id.* at 10:00. Throughout this part of their interaction, Mr. Krivolenkov asked Trooper Ferrer to pick up his phone so that he could call his lawyer and continue recording. Trooper Ferrer did not pick up his phone.

About ten minutes into the traffic stop Trooper Paulsen arrived. *Id.* at 15:45. Trooper Ferrer informed Trooper Paulsen of the events that had transpired. Trooper Paulsen picked Mr. Krivolenkov's phone up off the ground and put it on top of the vehicle. *Id.* at 18:32. Mr. Krivolenkov also gave Trooper Paulsen his account of what had happened. A couple minutes after arriving to the scene, Trooper Paulsen handed Mr. Krivolenkov his phone so that he could pull up his insurance. *Id.* at 19:45. Mr. Krivolenkov continued to insist on the presence of a supervisor.

When the third officer, Sergeant Raiser, finally arrived Trooper Ferrer's body camera was muted. *Id.* at 35:50. Mr. Krivolenkov finally stepped out of his vehicle and was arrested. *Id.* at 36:00. After being handcuffed and patted down the officers placed the contents of Mr. Krivolenkov's pockets, including his cell phone, in an evidence bag. Pl. Sur-Reply [ECF 15] Ex. 1-1 (A) ("Def. Ferrer Dash. Cam."), at 35:17, 36:06; Def. Ferrer Body Cam. at 38:04. A couple minutes later Trooper Paulsen took the cell phone out of the bag and handed it to Sergeant Raiser. Def. Ferrer Dash. Cam. at 36:42. Sergeant Raiser appeared to show it to Mr. Krivolenkov and then handed it back to Trooper Paulsen to put in the evidence bag. Def. Ferrer Body Cam. at

3 – OPINION AND ORDER

39:32; Def. Ferrer Dash. Cam. at 37:06. Sergeant Raiser also appeared to tap the screen of the cell phone but was primarily looking at and talking to Mr. Krivolenkov. The entire handling of the cell phone outside of the evidence bag lasted approximately 24 seconds. It is unclear from the video whether the cell phone was unlocked or locked, but the screen appears illuminated.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Mr. Krivolenkov brings four § 1983 claims against Defendants Jacob Ferrer, Kipo Raiser, and Oregon State Police. Claim one alleges that Trooper Ferrer violated his First Amendment rights by taking his cell phone and preventing him from recording the traffic stop. Claim two alleges Trooper Ferrer violated his Fourth Amendment right by seizing his cell phone and towing his vehicle without a warrant. Claim three alleges Sergeant Raiser violated his Fourth Amendment right by searching his cell phone without a warrant. Finally, claim four alleges that he was unlawfully arrested and wrongfully imprisoned.

### I.    Qualified Immunity

A § 1983 claim has two elements: (1) a violation of a federal constitutional or statutory right that was (2) committed under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Even if a plaintiff has alleged a valid § 1983 claim, a plaintiff cannot prevail if the officers are entitled to qualified immunity. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

Qualified immunity exists to protect public servants who perform their duties reasonably, while still allowing them to be held liable "when they exercise power irresponsibly." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under this doctrine, government agents are liable only if (1) the facts alleged show the violation of a constitutional right, and (2) the constitutional right is "clearly established." *Id.* at 232. A court may analyze these prongs in either order. *Id.* at 242. A right is said to be "clearly established" when a "reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. This does "not require a case directly on point"; instead "existing precedent must have placed the statutory or constitutional question beyond debate."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). I will apply this doctrine to Plaintiff's First and Fourth Amendment claims.

## II.     Eleventh Amendment Immunity for the Oregon State Police

Mr. Krivolenkov names the Oregon State Police as a defendant. However, the Eleventh Amendment of the United States Constitution imposes a limit on § 1983 claims against state actors. Pursuant to the Eleventh Amendment, citizens may not sue a state, its agencies, or departments without the state's consent. U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). Such entities are also not "persons" for purposes of a § 1983 claim. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). The two exceptions to this rule are if the state consents to the suit or if Congress abrogates a state's Eleventh Amendment immunity. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985), *superseded by statute on other grounds as stated in Lane v. Pena*, 518 U.S. 187, 197–200 (1996).

The Oregon State Police is a state agency. Oregon has not consented to this lawsuit nor has Congress abrogated Oregon's immunity. Accordingly, Plaintiff's claims against the Oregon State Police must be dismissed as a matter of law.

## III.    Claims Against Trooper Ferrer and Sergeant Raiser

### A.      Unlawful Arrest Under the Fourth Amendment

Mr. Krivolenkov alleges that Trooper Ferrer and Sergeant Raiser unlawfully arrested and wrongfully imprisoned him. "The Fourth Amendment requires police officers to have probable cause before making a warrantless arrest." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009). In order to succeed on a Fourth Amendment unlawful arrest claim, plaintiff must show that there was no probable cause to arrest him. *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (en banc). Courts look to "the totality of the circumstances known to the

arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (alterations omitted) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). "[A]n officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *von Brincken v. Voss*, 671 F. App'x 962, 963 (9th Cir. 2016) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The Supreme Court has also held that, if "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

It is undisputed that Mr. Krivolenkov violated the highway speed limit and was lawfully stopped by Trooper Ferrer. It is also undisputed that Trooper Ferrer initially informed Mr. Krivolenkov he was under arrest for failing to produce his driver's license and that Mr. Krivolenkov then gave Trooper Ferrer his license. However, Trooper Ferrer's subjective reason for arresting Mr. Krivolenkov is irrelevant if there was probable cause to arrest. *See von Brincken*, 671 F. App'x at 963. As Defendants now assert in their brief, Trooper Ferrer had a reasonable basis for believing there was probable cause to arrest Mr. Krivolenkov for having interfered with a peace officer per Or. Rev. Stat. 162.247. The body camera video shows Mr. Krivolenkov's initial refusal to obey Trooper Ferrer's lawful request for his driver's license. The body camera video also captures that, throughout his interaction with the officers, Mr. Krivolenkov repeatedly refused to obey lawful orders and behaved antagonistically to the officers during the entirety of the traffic stop. *See, e.g.*, Def. Ferrer Body Cam. at 09:07 ("Lay

7 – OPINION AND ORDER

your hands on me and I will defend myself"). I agree that the undisputed facts show Trooper Ferrer had probable cause to arrest Mr. Krivolenkov for interfering with a police officer.

I grant summary judgment in Defendants' favor on Mr. Krivolenkov's unlawful arrest claim.

### B.  Violation of First Amendment Right

Mr. Krivolenkov asserts that Trooper Ferrer "violated [his] First Amendment right when he took [his] cell phone from [him] and prevented [him] from video recording the traffic stop." Compl. [ECF 1] at 6. The body camera video shows that Trooper Ferrer knocked Plaintiff's cell phone out of his hand while attempting to get Mr. Krivolenkov to respond to his command to step out of his vehicle after informing him he was under arrest. Def. Ferrer Body Cam. at 08:36–08:44. After this exchange, Mr. Krivolenkov remained in his vehicle, refusing to get out, and repeatedly asked Trooper Ferrer to pick up his phone. Trooper Ferrer did not pick up Plaintiff's phone, but also did not prevent Plaintiff from picking up his phone himself.

 In order to establish a claim for a First Amendment violation, Mr. Krivolenkov must show that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *see also Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300–01 (9th Cir. 1999).

Viewing the facts in the light most favorable to Plaintiff, the nonmoving party, Mr. Krivolenkov has met prongs (1) and (2). Mr. Krivolenkov has a First Amendment right to videotape police officers engaged in their official duties. *See Adkins v. Limtiaco*, 537 F. App'x 721, 722 (9th Cir. 2013); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011). Whether Trooper

Ferrer knocking Mr. Krivolenkov's cell phone to the ground would chill a person of ordinary firmness from continuing to film is a closer call, because while Trooper Ferrer did not hand Mr. Krivolenkov back his cell phone, he also did not stop Mr. Krivolenkov from picking it up himself. But Mr. Krivolenkov likely feared he would be arrested if he did get up to retrieve his cell phone and so I assume that Trooper Ferrer's conduct chilled Mr. Krivolenkov's First Amendment right to film.

Nevertheless, Mr. Krivolenkov has put forth no evidence to indicate that the motivation behind Trooper Ferrer's conduct was to prevent him from recording. In fact, as is depicted by the body camera video, Trooper Ferrer knocked Mr. Krivolenkov's phone out of his hand to get Mr. Krivolenkov to comply with his lawful arrest and lawful command to step out of the vehicle. There is no indication that Trooper Ferrer's actions were retaliatory or aimed at curtailing Mr. Krivolenkov's First Amendment rights in any way. When Trooper Paulsen was on the scene later and Mr. Krivolenkov told Trooper Paulsen that his phone was knocked from his hand because Trooper Ferrer did not like that he was filming, Trooper Paulsen responded by informing Mr. Krivolenkov that "people film us all the time and it doesn't really bother us" and "we're always being filmed, even by our own cameras." Def. Ferrer Body Cam. at 25:47–58. And both Trooper Ferrer and Trooper Paulsen told Mr. Krivolenkov that they were recording on their body cameras, which reduces the idea that the troopers had any motivation to stop Mr. Krivolenkov from filming. *Id.* at 05:18, 21:50. There is no evidence to the contrary. I find that Mr. Krivolenkov has not met the requirements to establish a First Amendment violation, because he has failed to show that chilling his First Amendment rights was a substantial or motivating factor in Trooper Ferrer's conduct.

9 – OPINION AND ORDER

Even if Mr. Krivolenkov had adequately alleged a claim for a First Amendment violation, I also find that Trooper Ferrer meets the requirements for qualified immunity. As I previously stated, Plaintiff has a First Amendment right to videotape police officers. *Adkins*, 537 F. App'x at 722. But as discussed above, Trooper Ferrer lawfully stopped and arrested Mr. Krivolenkov and was attempting to execute the lawful arrest when he knocked Mr. Krivolenkov's cell phone out of his hand, preventing him from filming. While Mr. Krivolenkov's First Amendment right to film was "clearly established," no case establishes that Trooper Ferrer's conduct here violated that right. I find that a reasonable officer in Trooper Ferrer's position could have deemed it lawful to do what he did in order to effectuate the arrest, entitling him to qualified immunity.

Accordingly, I grant summary judgment in Defendants' favor on Mr. Krivolenkov's First Amendment claim.

### C.     Unlawful Seizure of Cell Phone and Vehicle

Mr. Krivolenkov also asserts that Trooper Ferrer unlawfully seized his cell phone by knocking it out of his hand and unlawfully seized his vehicle by towing it. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

As the body camera video depicts, while Trooper Ferrer does not pick up the cell phone and hand it back to Mr. Krivolenkov after knocking it to the ground, he does not prevent Mr. Krivolenkov from retrieving his cell phone himself nor does he repossess the cell phone in any way. I find there was no "meaningful interference" with Mr. Krivolenkov's possessory interest in his cell phone and therefore no unlawful seizure.

I also find there was no unlawful seizure of Mr. Krivolenkov's vehicle. Pursuant to their "community caretaking" function, police officers have discretion to "impound vehicles that 'jeopardize public safety and the efficient movement of vehicular traffic'" without violating the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976)). The discretion to impound was properly exercised in this case where Mr. Krivolenkov was arrested and taken from the scene, leaving his vehicle parked on the shoulder of a busy highway. There was no unlawful seizure.

I grant summary judgment in Defendants' favor on Mr. Krivolenkov's claim of unlawful seizure under the Fourth Amendment.

### D. Unlawful Search of Cell Phone

Finally, Mr. Krivolenkov asserts that Sergeant Raiser searched his cell phone without a warrant. While it is reasonable for an arresting officer to search a person incident to a lawful arrest, the Supreme Court has made clear that officers may not search the data of a cell phone without a warrant. *Riley v. California*, 573 U.S. 373, 401 (2014).

There is some factual dispute regarding this claim. But the bare assertion of some factual dispute does not require denial of summary judgment. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In their motion for summary judgment, Defendants contend that "Plaintiff did not provide the passcode to the . . . cellphone so as to allow any search of the cell phone data or information." Def. Mot. Summ. J. [ECF 7] at 7. In response Mr. Krivolenkov states, "My cell phone was already opened after trooper Travis Paulsen stopped my video recording app but did not lock it or turn[] it off." Pl. Resp. [ECF 13] at 2. He further asserts that "[S]ergeant Raiser

11 – OPINION AND ORDER

searched my cell phone looking for a phone number," *id.* at 2, but also says "Once I . . . noticed [S]ergeant Raiser searching my phone, I explicitly told him he cannot look inside my phone without a warrant and he verbally acknowledged it and quickly placed my cell phone back into the effects bag," *id.* at 1. The entire interaction lasted only 24 seconds. Setting to one side whether the cell phone was locked or unlocked and whether it was still recording, Mr. Krivolenkov must show that a rational jury could find Sergeant Raiser searched the contents of his phone within those 24 seconds.

Viewing the evidence in the light most favorable to Mr. Krivolenkov, I hold a rational jury could not find that Mr. Krivolenkov's cell phone was illegally searched. Although muted, the body and dashboard camera videos depict the officers handling the cell phone—Trooper Paulsen taking it out of the effects bag and handing it to Sergeant Raiser, Sergeant Raiser presenting it to Mr. Krivolenkov while handcuffed, and Sergeant Raiser handing the cell phone back to Trooper Paulsen who promptly returned it to the effects bag. The total elapsed time of this interaction with the phone outside of the evidence bag is 24 seconds. In fact, Sergeant Raiser only looks down at the phone twice in this exchange, the first time for roughly six seconds and the second time for less than one second. Def. Ferrer Body Cam. at 39:32–56. In that entire time, no officer does anything that could remotely resemble a search of the contents of Mr. Krivolenkov's cell phone. The most that can be said is the videos support Mr. Krivolenkov's assertion that Sergeant Raiser stopped the cell phone recording function because he touched the screen. That does not help Mr. Krivolenkov's claim of an unlawful search. Mr. Krivolenkov himself even acknowledges that Sergeant Raiser "quickly" returned his cell phone to the effects bag after he refused consent. There was no unlawful search of Mr. Krivolenkov's cell phone.

I find that a rational trier of fact could not view the facts that are captured on video and find for Mr. Krivolenkov. The videos do not support Mr. Krivolenkov's claim of an unlawful search of his cell phone, and in fact, belie it.

I grant summary judgment in Defendants' favor on Mr. Krivolenkov's claim of unlawful search under the Fourth Amendment.

## CONCLUSION

For the reasons stated above, I GRANT Defendants' Motion for Summary Judgment [7] as to all of Plaintiff's claims and I DENY as moot Defendants' Motion to Dismiss [7].

IT IS SO ORDERED.

DATED this 20th day of October, 2020.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge